UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WANDA DANSLER-HILL,

                        Plaintiff,

                                                 <u>DECISION AND ORDER</u>

                                                 10-CV-6102L

          v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                        Defendant.
_____

## INTRODUCTION

       Plaintiff Wanda Dansler-Hill ("plaintiff") brings this action alleging that defendant Rochester Institute of Technology ("RIT"), discriminated and retaliated against her with respect to her employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §290 et seq., and intentionally and negligently subjected her to the infliction of emotional distress.

       Familiarity with the relevant facts, summarized here, is presumed. Plaintiff was employed by RIT for approximately fifteen years. In or about February 2008, plaintiff left work for a disability leave occasioned by a back injury, anxiety and depression. Pursuant to its usual policies, RIT held plaintiff's job open for six months (26 weeks). However, after the allotted period expired, plaintiff remained disabled and unable to return to work. She applied and was approved for long-term disability benefits through RIT, and her employment with RIT was officially terminated on or about August 19, 2008.

On or about March 31, 2009, plaintiff filed a discrimination complaint against RIT with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been discriminated against on the basis of her race, and alleged disabilities. After investigating plaintiff's claims, on January 27, 2010, the EEOC issued a "no cause" finding and issued plaintiff a Right to Sue letter. Plaintiff timely commenced this action on March 1, 2010.

RIT now moves to dismiss the complaint pursuant to Fed. R. Civ. Proc. 8(a)(2) and 12(b)(6), on the grounds that plaintiff has failed to allege a plausible claim. For the reasons set forth below, RIT's motion to dismiss (Dkt. #3) is granted, and the complaint is dismissed.

## DISCUSSION

**I.  Motions to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff appears to confuse the standard by which motions are decided under Fed. R. Civ. Proc. 12(b)(6), and the standard for deciding motions for summary judgment under Fed. R. Civ. Proc. 56: she repeatedly urges that RIT's motion be denied on the ground that RIT has failed to support its arguments with sworn affidavits. Plaintiff is mistaken. Unlike motions for summary judgment, which employ shifting evidentiary burdens and require the parties to produce supporting evidence in admissible form, analysis of the instant motion is guided solely by the pleadings and the

documents incorporated therein by reference, wherein the truth of plaintiff's allegations is presumed. *See Savino v. Fiorella*, 2007 U.S. Dist. LEXIS 43284 at *10-*11 (W.D.N.Y. 2007).

## II. Plaintiff's Title VII and NYHRL Discrimination and Retaliation Claims

### A. Discrimination

Plaintiff generally alleges that the termination of her employment was the result of discrimination. To set forth a *prima facie* case of employment discrimination, plaintiff must allege: (1) membership in a protected class; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *See McDonnell Douglass Corp. v . Green*, 411 U.S. 792 (1973).

Plaintiff's discrimination claim is insufficiently stated as a matter of law. Plaintiff does not allege that she was qualified to perform the requirements of her position at the time her employment was terminated, or at any point thereafter. To the contrary, plaintiff left her job to go on disability leave in February 2008, and was still totally disabled six months later, at which point her employment was terminated and she was approved for long-term disability benefits. (Dkt. #1 at 9; Dkr. #3-3, Exh. G at ¶5). *See generally Faruq v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 4676 at *15 (W.D.N.Y. 2006) (dismissing discrimination claim as insufficiently stated where plaintiff alleges a lack of training that made her unqualified "by definition" for the position at issue, and otherwise makes no allegation that she was qualified); *Pearson-Fraser v. Bell Atl.*, 2002 U.S. Dist. LEXIS 25216 at *9 (S.D.N.Y. 2002) (dismissing discrimination claim where plaintiff fails to allege that she was qualified for the pertinent position). Because her allegations establish that she was not qualified to perform the requirements of her position – and in fact, had not been qualified to do so for several months – at or around the time her employment was terminated, plaintiff has failed to state a claim for discriminatory termination, and that claim must be dismissed.

B.  **Retaliation**

Plaintiff alleges that she attempted to remedy discrimination at her workplace "by contacting senior RIT management, to no avail," for which RIT subjected her to retaliation. (Dkt. #1, ¶17). This contention relies upon a letter plaintiff alleges she asked her attorney to write to RIT management on February 2, 2009 – six months *after* plaintiff's employment was terminated. (Dkt. #1 at ¶¶17, 18; Dkt. #6 at ¶30).

The crux of any retaliation claim is a cause-and-effect relationship whereby protected activity precedes, and gives rise to, an adverse employment action. It is axiomatic that no such relationship can be found to exist where the alleged adverse employment action began and ended *prior* to the commencement of any protected activity. Plaintiff's retaliation claim places the figurative cart before the horse, and it is therefore dismissed. *Cf. Deebs v. ALSTOM Transp., Inc.*, 346 Fed. Appx. 654, 657-658 (2d Cir. 2009) ("the law is clear that where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise") (internal quotations omitted), *citing Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

To the extent that plaintiff's retaliation claim rests upon RIT's temporary withdrawal of a workers' compensation claim settlement offer (Dkt. #6 at ¶34), which occurred after the termination of her employment, such action is not an adverse employment action – that is, a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2001). The materiality of an adverse employment action "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester County Dep't of Social Servs.*, 2006 U.S. App. LEXIS 21530 at *26-*28 (2d Cir. 2006). Typical examples of materially adverse actions include termination, demotion, or the material loss of wages, benefits, or job responsibilities. *See Galabya*, 202 F.3d 636 at 640.

Even assuming *arguendo* that plaintiff's prior employment relationship with RIT somehow entitled her to the settlement offer that RIT made and rescinded, plaintiff concedes that RIT reinstated the offer shortly after its withdrawal, and that she accepted it. (Dkt. #1 at ¶¶20, 25). Plaintiff does not allege that the rescission and reinstatement of the settlement offer resulted in any change whatsoever to the compensation or benefits that she received, or that it could have discouraged her or others from engaging in further protected activity. Accordingly, it cannot be deemed an adverse employment action, and cannot serve as the factual predicate for a retaliation claim under Title VII. *See Bobbitt v. New York City Health & Hosp. Corp.*, 2009 U.S. Dist. LEXIS 119555 at *37 and n. 30 (S.D.N.Y. 2009) (collecting cases, and noting that delayed payment of workers' compensation benefits is not an adverse employment action for purposes of Title VII).

### III. Plaintiff's ADA and NYHRL Discrimination Claims

Title I of the ADA prohibits employers from discriminating again any "qualified individual with a disability because of the disability of such individual" in regard to any aspect of employment. 42 U.S.C. §12112(a). A plaintiff asserting a violation of the ADA must show that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of his disability. *See Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001).

Common sense and well-settled law dictate that a person who is on disability leave because he is disabled from performing his job is not "otherwise qualified" to perform its essential functions, and therefore cannot establish a claim of disability-based discrimination, in the absence of some evidence that a reasonable accommodation exists. *See Murray v. Rick Bokman, Inc.*, 2001 U.S. Dist. LEXIS 7163 at *22-*23 (W.D.N.Y. 2001) ("[a]n employee who cannot perform the essential functions of his job even with a reasonable accommodation has no claim under the ADA because he is not a qualified individual, and 'it is irrelevant that the lack of qualification is due entirely to a disability'"), *quoting Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195 (7th Cir. 1997);

- 5 -

*Castellano v. City of New York*, 946 F. Supp. 249, 253 (S.D.N.Y. 1996) ("an individual who is totally disabled – that is, unable to perform the essential job functions even with reasonable accommodation – is not entitled to relief under [the ADA]"). *See generally Smith-Henze v. Edwin Gould Servs. for Children & Families*, 2008 U.S. Dist. LEXIS 94081 at *11-*13 (S.D.N.Y. 2008) (burden to allege and prove the existence of a reasonable accommodation that would permit the reinstatement of employee on medical leave is ultimately on plaintiff).

Although a temporally-defined leave of absence may constitute a reasonable accommodation, *Graves v. Finch Pruyn & Co. Inc.*, 457 F.3d 181, 185-86 (2d Cir. 2006), an employer is not required to place an employee an indefinite leave, awaiting the day when the employee might recover sufficiently from his disability to return to work. *See Stamey v. NYP Holdings, Inc.*, 358 F. Supp.2d 323, 324 (S.D.N.Y. 2005), *citing Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 9 (2d Cir. 1999).

Plaintiff had been on disability leave, premised on her inability to perform the requirements of her position, for six months at the time of her termination, and went on long term disability thereafter. She makes no allegation that she regained her ability to perform the requirements of her position at any point in time after February 2008, or that any reasonable accommodations, including but not limited to a longer period of leave, could have assisted her to do so. Therefore, she has failed to allege that she is was "otherwise qualified" to perform the essential functions of her position, and her disability-based discrimination claim is dismissed.

**IV.     Plaintiff's Hostile Work Environment Claim**

Plaintiff alleges that she was subjected to a hostile work environment because of her race and/or disability, in violation of the NYHRL, Title VII, and/or the ADA. In order to prevail on a claim that unlawful harassment has caused a hostile work environment, a plaintiff must demonstrate that the workplace was permeated with "discriminatory intimidation, ridicule, and insult... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the

hostile work environment to the employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

Whether conduct constitutes a hostile work environment depends upon such factors as the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. *See Winnie v. City of Buffalo*, 2003 U.S. Dist. LEXIS 1497 at *14-*15 (W.D.N.Y. 2003), *citing Harris*, 510 U.S. at 23. *See also Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) (incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

Plaintiff states that it is her "strongly held position" that between her initial injury in 2000 and her termination on or about August 19, 2008, certain RIT managers "subjected" her to "unwarranted racial slurs." She also alleges that she was accused of faking her disability in order to scam "the system, or taking "the easy way out." (Dkt. #1 at ¶¶ 10-12; Dkt. #3-3 at ¶6; Dkt. #6 at ¶¶ 21, 27). Curiously, nowhere in plaintiff's administrative charge, complaint or affidavit in opposition to the present motion to dismiss does plaintiff ever allege that she actually heard anyone utter a racial or ethnic slur, nor does she describe a single occasion when offensive language was used, or identify "who-said-what," or how often. The only specific words quoted by plaintiff – concerning "scamming the system" and taking "the easy way out" – are race-neutral on their face: plaintiff's contention that they were said because RIT's Human Resources management was unfairly applying a racial stereotype to her appears to be wholly speculative. (Dkt. #1 at ¶¶11-12, Dkt. #6 at ¶14).

Again,"a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.* 550 U.S. 544 at 555. On the whole, the comments and acts which plaintiff alleges in vague, generalized terms which

- 7 -

supply no factual nexus for attributing any discriminatory conduct to her employer, fall far short of the standard for alleging a hostile work environment claim.

Even assuming that plaintiff's woefully inadequate allegations did describe a level of conduct that could comprise a hostile work environment, the claim is untimely. Plaintiff does not allege that *any* of the incidents or statements mentioned in her complaint occurred within 300 days of the filing of her administrative charge on May 31, 2009. To the contrary, in order to have been incorporated into the EEOC charge, the incidents must have occurred on or before June 4, 2008. Since plaintiff's active employment was terminated in early February 2008, four months prior to that date, and all of the "racial or ethnic slur" incidents she describes are alleged to have occurred during plaintiff's active "tenure with RIT" (Dkt. #1 at ¶10), plaintiff has failed to satisfy the jurisdictional prerequisite for her instant hostile work environment claim.

### V. Plaintiff's State Law Claims: Intentional and Negligent Infliction of Emotional Distress

Under New York law, in order to state a claim for the intentional infliction of emotional distress, a plaintiff must allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress." *Brewer v. Brewer*, 34 Fed. Appx. 28, 30 (2d Cir. 2002).

Plaintiff claims that RIT intentionally engaged in extreme and outrageous conduct through the use of unspecified "racial and ethnic slurs," its statements related to her taking "the easy way out," and its conduct in general (Dkt. #1 at ¶¶10-12). This claim is untimely. The statute of limitations for an intentional infliction claim in New York is one year. *See* CPLR §215(3). The latest act alleged by plaintiff is RIT's rescission of a workers' compensation settlement offer on February 11, 2009. The complaint was filed more than a year later, on March 1, 2010.

Plaintiff's claim for negligent infliction of emotional distress is precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against

an employer. *See* N.Y. Workers' Comp. Law §§11, 29(6); *Lueck v. Progressive Ins., Inc.*, 2009 U.S. Dist. LEXIS 96492 at *13 (W.D.N.Y. 2009); *Hagie v. GMC*, 1999 U.S. Dist. LEXIS 5227 at *16 (W.D.N.Y. 1999).

## **CONCLUSION**

For the foregoing reasons, I find that plaintiff has failed to state a claim for discrimination, retaliation or hostile work environment under Title VII and/or the ADA, and that her state law claims for intentional and negligent infliction of emotional distress are untimely and/or precluded by state law. Accordingly, RIT's motion to dismiss the complaint (Dkt. #3) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 11, 2011.